## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRADY GRANHEIM,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**UNITED STATES OF AMERICA,** )<br>)<br>**Defendant.** ) | **Civil Case No. 21-1284 (RJL)** |

### MEMORANDUM OPINION
(November ⎰5⎱, 2023) [Dkt. ## 16, 17]

Brady Granheim, a former member of the Army National Guard, suffered multiple facial fractures in a violent home invasion. He applied for short-term benefits through the Traumatic Servicemembers' Group Life Insurance ("TSGLI") program but was denied by the Army. Although he was no doubt the victim in a terrible tragedy, the Army did not act arbitrarily or capriciously in deciding that his injuries did not entitle him to relief under the program's narrow schedule of qualifying losses. Accordingly, the Court will DENY Granheim's motion for summary judgment and GRANT the Government's cross-motion.

### BACKGROUND

### I.      Legal Background

The TSGLI program provides short-term financial assistance to servicemembers and veterans (collectively, "servicemembers") who are enrolled in the Servicemembers' Group Life Insurance program and who have suffered traumatic injuries. *Barker v. United States*, 404 F. Supp. 3d 251, 254 (D.D.C. 2019) (Sullivan, J.). To receive benefits under the program, an enrolled servicemember must show that a traumatic injury resulted in a

qualifying loss. 38 U.S.C. § 1980A(a)(1). Qualifying losses are prescribed in a schedule issued by the Secretary of Veterans Affairs in a regulation. *Id.* § 1980A(b)(1).

In the schedule applicable here, one qualifying loss is the inability to carry out activities of daily living ("ADLs")—that is, the inability to independently perform at least two of the six following functions: bathing, continence, dressing, eating, toileting, and transferring in or out of a bed or chair with or without equipment. 38 C.F.R. § 9.20(e)(6)(vi) (2015).[1] Benefits become available only if the inability lasts for certain minimum durations. For an inability resulting from a traumatic brain injury, the servicemember is entitled to a lump sum of $25,000 after fifteen consecutive days of inability, plus another $25,000 after thirty consecutive days of inability. *Id.* § 9.20(f)(17).[2]

## II.    Factual Background

Late on November 10, 2010, Granheim was the victim of a violent home invasion in Cloquet, Minnesota, in which he was hit or kicked in the head multiple times. A.R. at 18, 46. After the attack, he was taken to the emergency room at a nearby hospital. *Id.* at 46, 90. While there, he vomited, so the staff decided to intubate him for "airway protection." *Id.* at 47–48. He was then referred to a hospital in Duluth for treatment of facial fractures. *Id.* at 46. At the Duluth hospital, it was noted in the morning that "[h]e

---

[1] Granheim applied for benefits in August 2014, shortly after the Secretary made amendments to the schedule that became codified in the 2015 version of the Code of Federal Regulations. *See* Servicemembers' Group Life Insurance, 79 Fed. Reg. 44,297 (July 31, 2014) (to be codified at 38 C.F.R. pt. 9). In March 2023, the schedule was moved to a new section of the Code; the specific qualifying loss at issue here did not substantively change. *See* Servicemembers' Group Life Insurance Traumatic Injury Protection Program, 88 Fed. Reg. 15,907, 15,914–15 (Mar. 15, 2023) (to be codified at 38 C.F.R. pt. 9).

[2] Additional lump sums of $25,000 are also available after sixty and ninety consecutive days of inability, 38 C.F.R. § 9.20(f)(17) (2015), but those two durational thresholds are not at issue here.

2

had quite a bit of alcohol last night." *Id.*   He remained at the hospital for a week, undergoing reparative facial surgery on November 16.  *Id.* at 37.  He was discharged the next day with a principal diagnosis of assault and secondary diagnoses of respiratory failure secondary to trauma, acute ethanol intoxication, and multiple facial fractures.  *Id.*

After being discharged, Granheim had four follow-up appointments.  First, on November 22, 2010, he had his sutures removed and was reported to be "doing well."  *Id.* at 120.  Then, on November 30, he was seen by the ophthalmologist who saw him during his hospitalization.  *Id.* at 35.  The ophthalmologist reported no evidence of recent photopsia, retinal breaks, or posterior vitreous detachment, although some swelling and scar tissue did limit the examination.  *Id.*  Next, on December 1, Granheim met with his reconstructive surgeon, who noted that Granheim had some cloudy vision but "no particular complaints."  *Id.* at 119.  Finally, on December 3, Granheim visited an ophthalmologist on an emergency basis with complaints of worsening peripheral vision, flashing lights in his vision, and a bad headache.  *Id.* at 33.  He underwent CT imaging, which revealed "persistent debris and hemorrhage in the left maxillary sinus" and a "[s]mall amount of debris or hemorrhage within the floor of the right maxillary sinus with unchanged mildly depressed anterior wall right maxillary sinus fracture."  *Id.* at 76.

### III.   Procedural History

Almost four years later, in August 2014, Granheim applied for TSGLI benefits.  *Id.* at 1–15.  He claimed that he suffered a traumatic brain injury that resulted in the inability to perform ADLs for at least thirty consecutive days and, consistent with the schedule of qualifying losses discussed above, was thus entitled to $50,000.  *Id.* at 10, 14–15.  Attached

to his application were declarations from himself, his wife, and his father, signed just before he submitted his application. *Id.* at 18–25. They each reported that, after he was discharged from the hospital and until at least December 12, 2010, Granheim experienced significant pain, dizziness, and imbalance and required assistance with bathing, dressing, toileting, and transferring. *Id.* Also attached to his application was a report from a registered nurse, who, after reviewing those declarations and Granheim's medical records, opined that Granheim suffered a traumatic brain injury and was thereby unable to perform ADLs. *Id.* at 27–28.

His claim was denied by the Office of Servicemembers' Group Life Insurance, because his medical documentation did not support his claim that he was unable to perform ADLs for at least fifteen consecutive days. *Id.* at 137–39. Granheim requested reconsideration, *id.* at 140–43, and his claim was again denied, *id.* at 328–31. Granheim then appealed the denial to the U.S. Army Human Resources Command. *Id.* at 332. He supplemented his appeal with a statement from another registered nurse, who, after reviewing the medical records and declarations, also opined that Granheim was unable to perform ADLs for at least thirty consecutive days. *Id.* at 342–43. Granheim's appeal was denied for similar reasons as his original claim: the record did not support his claim that he was unable to perform ADLs in at least a modified independent manner for at least fifteen consecutive days. *Id.* at 680–81.

That denial left one final administrative step for Granheim: an appeal to the Army Board for Correction of Military Records. *Id.* at 680, 749–50. Before rendering a decision, the Board received two additional medical opinions based on reviews of the record. First, an Army Review Boards Agency medical advisor agreed with the prior administrative

decisions that Granheim's medical documentation did not support his claimed inability to perform ADLs. *Id.* at 1151–52. Then, Granheim submitted a responsive submission from a doctor opining that the exact opposite was true. *Id.* at 1156–63. In a relatively short opinion, the Board agreed with the former, finding insufficient evidence to support Granheim's claim to benefits. *Id.* at 1164–73.

With the agency's decision final, Granheim filed this lawsuit challenging the denial. Compl. [Dkt. #1] ¶¶ 3–6. Without admitting error, the Government moved to remand for the Board to reconsider its denial of Granheim's claim in light of the allegations in his complaint. Consent Mot. for Voluntary Remand and Stay of Proceedings [Dkt. #7]. The Court granted that motion. Order (July 12, 2021) [Dkt. #8]. On remand, the Board received yet another opinion from the Army Review Boards Agency medical advisor, who again thought there was insufficient evidence of Granheim's inability to perform ADLs for at least fifteen consecutive days. A.R. at 1205–10. In a more thorough opinion than its first, the Board again concluded that Granheim was not entitled to TSGLI relief, for the reasons detailed below. *Id.* at 1211–34.

The parties then each moved for summary judgment. Those motions were fully briefed and are now ripe. Pl.'s Mot. for Summ. J. [Dkt. #16]; Pl.'s Mem. of Points and Authorities in Supp. of Mot. ("Granheim Mot.") [Dkt. #16-1]; Def.'s Cross-Mot. for Summ. J. [Dkt. #17]; Mem. of Law in Supp. of Cross-Mot. and Opp'n to Pl.'s Mot. ("Gov't Mot.") [Dkt. #17-1]; Pl.'s Opp'n to Def.'s Cross-Mot. and Reply to Def.'s Opp'n [Dkt. #19]; Def.'s Reply in Supp. of Cross-Mot. [Dkt. #21].

## LEGAL STANDARD

Although the parties have moved for summary judgment, the typical legal standard under Federal Rule 56 does not apply where, as here, the Court is reviewing an administrative decision. *Barker*, 404 F. Supp. 3d at 260. In reviewing that decision, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Rich v. United States*, 369 F. Supp. 3d 263, 273 (D.D.C. 2019) (Hogan, J.) (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (Bates, J.)). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Barker*, 404 F. Supp. 3d at 260 (quoting *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 160 (D.D.C. 2011) (Boasberg, J.)).

Under the APA, the Court shall set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the arbitrary and capricious standard of review, the Court will uphold an agency action so long as "the agency examines the relevant facts and articulates a satisfactory explanation for its decision including a 'rational connection between the facts found and the choice made.'" *Barker*, 404 F. Supp. 3d at 260–61 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). That standard is deferential, but the Court still must ensure that the agency engaged in reasoned decision making. *Id.* at 261.

## DISCUSSION

In denying Granheim TSGLI benefits, the Board reached two primary conclusions: (1) that he did not suffer a traumatic brain injury and (2) that he was not unable to perform ADLs for at least fifteen consecutive days after his injury. Neither conclusion was arbitrary or capricious.

### I.   Traumatic Brain Injury

The Board's conclusion that Granheim did not suffer a traumatic brain injury was not arbitrary or capricious. Central to its decision was the fact that Granheim's hospital discharge summary did not mention a traumatic brain injury, "a well-recognized diagnosis within the medical community" at the time. A.R. at 1228. In other words, had he suffered a traumatic brain injury, the discharge summary "surely would have mentioned" it. *Id.*; Gov't Mot. at 15. The Board gave greater weight to that record than to the medical opinions submitted on Granheim's behalf regarding his pain, dizziness, and imbalance, because those opinions relied primarily on his and his family's declarations provided years after the fact. A.R. at 1215, 1217, 1228. It was entitled to weigh the evidence that way. *Hayes v. United States*, 2022 WL 2817598, at *7 (D.D.C. July 19, 2022) (Boasberg, J.).

Granheim has two disagreements with the Board's reading of the medical documentation, both of which are nonstarters. First, he claims that the Board failed to consider the medical records from his emergency ophthalmologist visit on December 3, 2010. Granheim Mot. at 16–17. Even assuming he is correct notwithstanding the Board's review of "all supporting documents," A.R. at 1227, that visit was for worsening vision and a headache; a traumatic brain injury is never mentioned, *id.* at 33–34. The Board need

only "examine[] the *relevant* facts," and it did just that.  *Barker*, 404 F. Supp. 3d at 261 (emphasis added).

Second, Granheim faults the Board for referring to the Army Review Boards Agency medical advisor's opinion that Granheim was initially intubated because of alcohol-induced vomiting, not because of a suspected closed head injury.  Granheim Mot. at 14–16; *see* A.R. at 1220.  It is true that the medical records say only that Granheim was intubated for "airway protection" after vomiting in the emergency room—without saying what caused the vomiting.  A.R. at 47–48.  But the Board did not rely on the medical advisor's intoxication opinion in concluding that Granheim did not have a traumatic brain injury.  It merely summarized that opinion in a background "Medical Review" section; the opinion gets no mention in the "Board Discussion" section.  A.R. at 1218–20, 1227–29.  Granheim's argument, then, fights a straw man.

## II.    Inability to Perform ADLs

The Board's second conclusion, that Granheim was not unable to perform ADLs, was also not arbitrary or capricious.  It again agreed with the Army Review Boards Agency medical advisor, who noted the lack of any medical documentation on Granheim's inability to perform ADLs and inferred therefrom that Granheim could perform ADLs in at least a modified independent manner within fifteen days of his hospitalization.  A.R. at 1229.  As further support, Granheim at the time "was in his mid-twenties, was a physically fit Soldier, and had full use of his legs and arms."  *Id.* at 1228.  A "rational connection" between those facts and the Board's conclusion exists, *Barker*, 404 F. Supp. 3d at 261, and Granheim concedes as much, Granheim Mot. at 18 ("[T]hese assumptions [are] reasonable.").

What Granheim disagrees with is the Board's treatment of his and his family's declarations that he required assistance with certain ADLs after his hospitalization. *Id.* at 18–19. The Board expressly gave greater weight to the medical advisor's opinion, which relied on medical records from Granheim's hospitalization, than to the "post-hoc" declarations given four years after the fact. A.R. at 1228–29. Granheim calls that an error. In fact, he says, his family's declarations are dispositive in his favor on the issue of his inability because of the lack of affirmative evidence that he *could* perform ADLs. Granheim Mot. at 18–19. He points to *Fail v. United States*, in which the court found dispositive a statement from a TSGLI claimant's wife that she had to assist him with certain ADLs, which went unrebutted by the mostly illegible handwritten doctor's notes that made up his medical record. 2013 WL 5418169, at *13 (D. Colo. Sept. 27, 2013). But that case is factually distinguishable from this one. The medical records here are more extensive, comprehendible, and detailed, yet they still do not mention that Granheim was unable to perform ADLs. Plus, there *is* "contrary evidence in the contemporaneous medical records" showing Granheim's ability to performs ADLs. *Cloud v. United States*, 2019 WL 1924363, at *7 (D.D.C. Apr. 30, 2019) (Kelly, J.) (distinguishing *Fail* on that basis). As the medical advisor and the Board observed, Granheim's discharge summary states that, during his hospitalization, "he was up independently voiding without difficulty." A.R. at 38, 1220. Because the Board was "entitled to give greater weight to contemporaneous medical records than after-the-fact statements," *Hayes*, 2022 WL 2817598, at *7 (quoting *Cloud*, 2019 WL 1924363, at *7), its conclusion was not arbitrary or capricious.

## CONCLUSION

For the foregoing reasons, Granheim's motion for summary judgment will be DENIED, and the Government's cross-motion for summary judgment will be GRANTED. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge